OPINION
Defendant-appellant, Mary A. Jeffers, appeals the trial court's finding that she was in contempt for violating a Civil Protection Order ("CPO"). Appellant asserts that the trial court erred in finding her in contempt. Because we find that the trial court erred in finding that appellant harassed plaintiff-appellee, Allen Jeffers, we agree. Appellant also argues that the trial court erred in finding her guilty of a crime. We do not address this argument because it is moot. Appellant finally argues that the CPO is void. Because we find that these issues are resjudicata, we do not address them.
The parties divorced in 1996. On June 19, 1997, the trial court signed and filed a document entitled "Consent Agreement for Civil Protection Order R.C. 3113.31." The memorandum provided, in part:
 Mary Ann Jeffers, Respondent, is hereby restrained from abusing, beating, assaulting, threatening, or harassing Petitioner, Allen Jeffers and/or Barbara Hancock at any time, in any place, in any manner. Respondent is to stay at least 20 feet from Petitioner and/or Barbara Hancock.
Appellee and Barbara Hancock eventually married. On July 27, 1999, appellee filed a contempt motion against appellant. In appellee's affidavit, he asserted that: (1) he had no contact with appellant since the CPO went into effect; (2) appellant informed the parties' daughters of the address and purchase price for a home he bought after the CPO took effect; (3) he saw appellant drive by his residence shortly after he purchased the home in October 1998; (4) before his June 16, 1999 retirement party, appellant told their daughters that she intended to attend the party and believed that the CPO was no longer in effect; and (5) appellant appeared at his party and was asked to leave several times before she did.
At the hearing, the testimony focused on the events surrounding appellee's retirement party. This party took place in the banquet room of the Moose Lodge ("Moose"). The banquet room and the bar area are connected by a serving window behind the bar. Appellant testified that she was at the Moose, where she is a member, on the night of appellee's retirement party. Appellant explained that even though she knew that the retirement party was at the Moose, she went there to visit friends. However, when she arrived, the friends were not in the bar area. Appellant testified that she had no contact with appellee in two years.
Robert Whalen testified that appellant told him that she was going to crash appellee's retirement party.
Steve Stockwell testified that he ran into appellant near the restrooms during appellee's retirement party. Stockwell testified that appellant stated that she knew she should not be there, but was curious about the party. Stockwell explained that appellant sat at the bar, where she could see into the banquet room through a service window connecting the banquet room with the bar area, but never entered the banquet room and had no contact with appellee.
James Igoe, who organized the retirement party, testified that after he learned that appellant was in the bar area, he approached her. Igoe testified that once appellant told him that she had a right to be at the Moose because she is a member, he closed the service window. According to Igoe, appellant was at the Moose for about twenty minutes.
John Slagle testified that once he saw appellant at the Moose, he stationed two party guests at the door to the banquet room to ensure appellant would not enter and then informed the parties' daughter of the situation.
Appellee testified that he saw appellant drive by his new house once and heard that appellant knew the address and purchase price of his new home, but never saw her at the retirement party. Appellee testified that he was not aware that appellant was at the Moose until after she left. Appellee admitted that he had had no contact with appellant since the CPO went into effect.
In March 2000, the trial court found that appellant violated the "consent agreement by harassing the petitioner, a misdemeanor of the fourth degree." The trial court sentenced appellant to five days in jail, credited her with three days already served, and suspended the remaining two days if she paid one thousand seven hundred fifty dollars to appellee in installments. Appellant appeals, and asserts the following assignments of error:
 I. THE TRIAL COURT ERRONEOUSLY CONVICTED DEFENDANT-APPELLANT OF A FOURTH-DEGREE MISDEMEANOR WITHOUT STATUTORY AUTHORITY AND IN VIOLATION OF GRANTED DEFENDANT-APPELLANT'S DUE PROCESS RIGHTS.
 II. THE [CPO] IN THE CASE AT BAR WAS VOID AS IT DID NOT CONFORM TO THE EXPRESS REQUIREMENTS OF THE STATUTE.
 III. THE COURT ERRONEOUSLY FOUND MARY ANN JEFFERS IN CONTEMPT OF TERMS IN THE [CPO], AS THE ORDER EXCEEDED THE COURTS [sic] AUTHORITY AS DEFINED BY STATUTE.
 IV. THE [CPO] IN THE CASE AT BAR WAS VAGUE AND AMBIGUOUS AND THEREFORE UNENFORCEABLE AS TO THE PROHIBITION AGAINST HARASSMENT.
 V. THE COURT'S [sic] WAS CONTRARY TO THE WEIGHT OF THE EVIDENCE.
We address appellant's fifth assignment of error first. Appellant argues that the trial court's finding of contempt is against the manifest weight of the evidence.
Contempt is either civil or criminal in nature. Catholic Social Serv.of Cuyahoga Cty. v. Howard (1995), 106 Ohio App.3d 615, 619. Criminalcontempt is usually characterized by an unconditional prison sentence or fine, and is designed to vindicate authority of the court and punish the individual found in contempt. Id.
The power to find an individual in contempt of court is inherent in a court as necessary to the exercise of its judicial function. Denovchekv. Bd. of Trumbull Cty. Commrs. (1988), 36 Ohio St.3d 14, 15. As the primary interest involved in contempt proceedings is the authority and proper functioning of a court, great reliance is placed upon the trial judge's discretion in contempt matters. Id. at 16. Nevertheless, when thecontempt is criminal, evidence of guilt must be beyond a reasonable doubt. Brown v. Executive 200, Inc. (1980), 64 Ohio St.2d 250, 251; Statev. Kitchen (1988), 128 Ohio App.3d 335, 342.
After reviewing the entire record, we find that the trial court erred by finding appellant harassed appellee. The CPO did not contain a definition of the word "harass." Harass means "to disturb persistently; torment, as with trouble or cares; bother continually; pester; persecute *** to trouble by repeated attacks ***." Webster's New Universal Unabridged Dictionary (1996) 870. Implicit in the word "harass" is a continuing course of conduct. Even if the trial court found all of appellee's witnesses credible, the sum of appellant's actions were: (1) going to the Moose while appellee's party was taking place; (2) driving by appellee's house once; and (3) possessing the knowledge of the purchase price and address of appellee's new home. All parties agreed that appellant had absolutely no contact with appellee once the CPO became effective. While appellant may have gone to the Moose with the intent to bother appellee, appellee was not aware of appellant's presence and only became aware of it through other guests after appellant left.
Thus, we find that appellant's actions cannot legally constitute harassment. Accordingly, we find that the trial court erred in finding appellant guilty of criminal contempt[1] and sustain appellant's fifth assignment of error.
Our disposition of appellant's fifth assignment of error renders her first assignment of error moot. Therefore, we do not consider it. See App.R. 12 (A)(1)(c).
We next consider appellant's second, third, and fourth assignments of errors together because they all challenge the validity of the CPO itself.
The issuance of a CPO after a full hearing is a final appealable order. R.C. 3113.31(G). If a final appealable order is not timely appealed, all matters that could have been reviewed had an appeal been taken become res judicata and are not reviewable in a related or subsequent proceeding or appeal. See, e.g., In re Adoption of Greer
(1994), 70 Ohio St.3d 293, fn. 1, citing In re Adoption of Jorgenson
(1986), 33 Ohio App.3d 207, 208-209.
Appellant argues that the CPO is void because it does not contain a time limitation, exceeds the court's authority, and is vague and ambiguous. Appellant could have raised all of these arguments in a direct appeal. Therefore, the issues are res judicata and we will not consider them. Accordingly, we overrule her second, third, and fourth assignments of error.
In sum, we sustain appellant's fifth assignment of error, find appellant's first assignment of error moot, and overrule appellant's second, third, and fourth assignments of error. Accordingly, we affirm in part and reverse in part the judgment of the trial court, and remand for further proceedings consistent with this opinion.
BROWN and LAZARUS, JJ., concur.
KLINE, J., of the Fourth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] We note that the trial court classified this contempt as a misdemeanor of the fourth degree. Appellant asserts that this constitutes a conviction of R.C. 2919.27 (violating protection order or consent agreement). However, no criminal complaint was filed in this case charging appellant with violating R.C. 2919.27. Therefore, the trial court could not have convicted her of violating R.C. 2919.27.